J-S39001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

DUSTIN ROUPE : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
AMANDA FICARRI : No. 174 WDA 2024

Appeal from the Order Dated January 8, 2024
In the Court of Common Pleas of Beaver County Civil Division at No(s):
No. 10209-23

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED:  January 8, 2025**

Dustin Roupe ("Father") appeals from the January 8, 2024 order entered in the Beaver County Court of Common Pleas that awarded him and Amanda Ficarri ("Mother") shared legal and physical custody of the parties' four-year-old child, L.J.R. ("Child").  Father raises challenges to weight of the evidence with regards to the trial court's consideration of the 23 Pa.C.S. § 5328 custody factors and further argues that the trial court improperly considered Father's motivation in pursuing primary physical custody of Child.  Upon review, we affirm.

The Honorable Kim Tesla has authored a thorough and accurate procedural and factual history in the February 26, 2024 Pa.R.A.P. 1925(a) Opinion and Order ("Opinion"), which we adopt for purposes of this appeal. Trial Ct. Op., 2/26/24, at 1-4.  By way of background, Father and Mother were never married but lived together for approximately five years until they

separated in May 2022 and agreed to an informal shared custody agreement, where Child spent equal time with each parent. Mother and Father are both employed and both have extended family that live nearby. Father has a new significant other, Amber Falletta, and the two have a child together. Father and Ms. Falletta have purchased a portion of Father's parents' 45-acre property and intend to build a home there together.

On February 14, 2023, Father filed a custody complaint requesting primary physical custody of Child and averring that Mother had mental health issues. On July 14, 2023, the trial court entered a proposed order that awarded the parties shared legal and physical custody on a "2-2-3 day" rotating schedule. The proposed order gave preference to Father's work schedule.

On August 3, 2023, Father filed exceptions, again averring that Mother had mental health issues. The court held pre-trial conferences on September 29 and October 6, 2023, but was unable to mediate the conflict between the parties. While Mother was in agreement with the July 14, 2023 proposed order, Father wanted to pursue primary physical custody.

The court held hearings on December 15, 2023, and December 19, 2023. The parties entered a stipulation that "Mother's mental health would not be an issue at trial, so it would not be necessary for Mother to present expert testimony on her mental health to the [c]ourt during trial." Trial Ct. Op. at 2. Father presented testimony from himself; Ms. Falletta; Wendy Richards, Father's mother; and Leroy Richards, Father's father. Mother

- 2 -

presented testimony from herself; Dominic Ficarri, III, Mother's father; Jeanette Ficarri, Mother's mother; Traci Rice, Mother's sister; Cody Rogers, parents' mutual friend and babysitter for Child; and Dominic Ficarri, Mother's brother.

Relevant to this appeal, the court heard evidence that on July 23, 2023, Father filed a petition for a reduction of child support payments but, after hearing evidence, the court increased Father's support obligation. Father admitted that, after the child support hearing, he became upset and angry and confronted Mother outside of the courthouse. As a result of the incident, the parties agreed to a protection from abuse ("PFA") order with Mother as the protected party. The court entered the order without either party making admissions to the underlying accusations, and by agreement of the parties, the court subsequently dismissed the PFA action.

On cross examination, Mother's counsel asked Father why he continued to pursue primary physical custody. and Father testified that he wanted one more day of custody because of his belief that he should have custody whenever Mother was working and needed to use childcare providers. Father also expressed concerns with Mother's care of Child relating to Child's education and hygiene. Also on cross examination, Father testified that his plans to build a house were delayed because the court increased his child support obligation.

On January 2, 2024, after considering each of the Section 5328 custody factors on the record, the court issued a decision awarding the parties shared

legal and physical custody of Child on a "2-2-3 day" rotating schedule. The trial court also made a finding that "a primary incentive of [F]ather for continuing to pursue a change in the shared custody order is the recent increase in child support and [F]ather's desire to lower child support in order to build a house." Order, 1/2/24, at 2 (unpaginated).

Father timely appealed. Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

1. Did the honorable trial court err[] and abuse its discretion by issuing an order that focuses on an errant assumption regarding the main motivation of [] Father being a desire to reduce his child support, which is not a custody factor?

2. Did the honorable trial court err[] and abuse its discretion by issuing an order that fails to grant Father primary physical custody and fails to accurately apply 23 Pa.C.S. [§ ]5328, the [17] relevant custody factors, to the facts of this case? Father's home provides structure, stability, sibling relationships, routines, a better school district, extended family in a rural setting, activities and a wonderful way of life. Mother has no available, secure childcare, leaves for work extremely early in the morning limiting the child's sleep, lacks stability at present, and lives too far for a shared schedule to be sustainable when school starts.

Father's Br. at 7.

## A.

This Court reviews a custody determination "for an abuse of discretion, and our scope of review is broad." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This Court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*,

144 A.3d 145, 151 (Pa. Super. 2016). We must accept the findings of the trial court that the evidence supports. **S.W.D.**, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." **K.T. v. L.S.**, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake. **J.C. v. K.C.**, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

When reviewing child custody matters, our "paramount concern and the polestar of our analysis" is the best interests of the child. **Saintz**, 902 A.2d at 512 (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." **D.K.D. v. A.L.C.**, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." **S.C.B. v. J.S.B.**, 218 A.3d 905, 916 (Pa. Super. 2019).

The trial court "shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to

the factors . . . which affect the safety of the child," including the specific factors mandated by the Custody Act. 23 Pa.C.S. § 5328(a). The court must "delineate the reasons for its decision[.]" *Id.* at § 5323(d). Finally, "[i]n any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent" and no "preference based upon gender." *Id.* at §§ 5327(a), 5328(b).

In his first issue, Father avers that the trial court abused its discretion when it improperly considered Father's motivation in pursuing primary physical custody of Child. Father's Br. at 17, 24. Father argues that the trial court made an "errant" finding that Father pursued primary physical custody of Child in an effort to reduce his recently increased child support obligation. *Id.* Father asserts that this is not a custody factor and, therefore, the court should not have considered it. *Id.* at 17. Father's arguments lack merit.

In presenting his argument, Father fails to acknowledge that Section 5328 compels the trial court to "determine the best interest of the child by considering **all relevant factors**[.]" 23 Pa.C.S. § 5328(a) (emphasis added). The statute provides a non-exhaustive list of the specific factors that the trial court "shall" consider, including catchall factor 16: "Any other relevant factor." *Id.* at § 5328 (a)(16).

Instantly, the trial court acknowledged that factor 16 allows the court to consider "any other relevant factor" and found Father's motivation to save money to be relevant. Trial Ct. Op. at 20. The trial court opined:

> The Court believes that Father's motivation in continuing his efforts to obtain primary custody of the minor child is relevant, given that his motivation appears to not concern the actual best interests of the minor child but to his own interest in obtaining a decrease in his child support payments.

*Id.* The court further explained that it did not base its decision solely on Father's motivations but, rather, properly considered all the custody factors in coming to a decision. The court opined:

> In addition, the Court did not base its custody decision solely on its finding that Father had ulterior motives in pursuing child custody litigation. The Court heard two days of testimony in this case. It heard the testimony of both parties, and examined the evidence and exhibits presented at trial. The Court carefully reviewed the § 5328 factors and applied them to the factual circumstances of this case before making its child custody determination. The Court determined that the current child custody arrangement was working for both parties, even though the current order still benefits Father over Mother, since it accommodates his work schedule but not hers. Even if the Court did not consider Father's motivation in continuing to pursue primary custody of the minor child, the Court's analysis and application of the § 5328 factors would not change. Regardless of Father's motivations behind continuing to pursue primary custody, proper application of the § 5328 factors shows that shared custody is in [Child]'s best interest.

*Id.*

Father provides no legal authority to support his position that a parent's motive in filing a custody petition is not a relevant factor for the court to consider. Upon review, we conclude the record supports the court's findings. Accordingly, we find no abuse of discretion.

In his second issue, Father avers generally that the trial court misapplied the Section 5328 custody factors. Father's Br. at 25-26. Essentially, Father asks this Court to reweigh the evidence, which we cannot do. In accordance

with our well settled standard of review, we defer to the trial court on issues of weight and credibility. The Honorable Kim Tesla has authored a comprehensive, thorough, and well-reasoned Opinion, including discussion of relevant law, and has engaged in an analysis of each of the Section 5328 custody factors and made specific findings regarding each factor, which the record supports. Trial Ct. Op. at 8-18. (addressing Father's second issue on appeal, considering all the Section 5328 custody factors, and finding that it was in Child's best interest to award shared legal and physical custody of Child to parents). After a thorough review of the parties' briefs, the applicable law, and the trial court's Opinion, we discern no abuse of discretion. We, thus, adopt the trial court's analysis as our own and affirm on the basis of the trial court's February 26, 2024 Opinion.

In sum, the trial court did not err when it considered Father's motive in filing the custody complaint. Moreover, the trial court thoroughly considered all the Section 5328 custody factors prior to its custody award, and the record supports the trial court's findings. Accordingly, we find no abuse of discretion.

All parties are instructed to attach a redacted copy of the trial court's February 26, 2024 Opinion to all future filings.

Order affirmed.

Judge Nichols joins the memorandum.

Judge Kunselman did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/8/2025

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
PENNSYLVANIA
CIVIL DIVISION – LAW

DUSTIN ROUPE,

      PLAINTIFF

    VS.

AMANDA FICARRI,

      DEFENDANT

NO.   10209-2023

CUSTODY

## Pa. R.A.P. 1925(a)(2) OPINION AND ORDER

TESLA, J.

FEBRUARY **26**, 2024

### INTRODUCTION

The matter before the Court is an appeal by Dustin Roupe (hereinafter, "Father") of the Court's January 2, 2024, Custody Order granting shared custody between Father and Amanda Ficarri (hereinafter, "Mother") of their minor child, L.J.R. ▓▓▓▓▓▓▓▓. On appeal, Father argues that the Court did not properly consider the sixteen child custody factors of 23 Pa. C.S.A. § 5328, and that the Court erred by making a factual finding that one of Father's motivations in continuing to pursue primary custody of the minor child was to obtain a decrease in his child support payments, which had been increased during the litigation of his matter. For the reasons stated below, the Court finds that Father's claims are without merit.

### FACTS AND PROCEDURAL HISTORY

On February 14, 2023, Father filed a Complaint for Custody against Mother requesting primary physical custody of the parties' minor child L.J.R. In the Complaint, Father alleged that Mother was employed by UPMC Wexford as a patient care technician. Father further alleged that

184 A

Mother suffered from mental health issues that prevented her from properly caring for the minor child. Father requested primary physical and legal custody. The Court entered a Proposed Order on July 14, 2023, providing for shared physical and legal custody for the parties, and allowing Father to have primary physical custody during his days off work.

On August 3, 2023, Father filed Exceptions to the Proposed Custody Order. The Court scheduled a pre-trial conference on Father's Exceptions. In his Exceptions, Father again alleged that Mother suffered from mental health issues that may negatively impact her ability to care for the child on a ½ time basis.

The Court held pre-trial conferences on September 29 and October 6, 2023. At the pre-trial conferences, the Court attempted to mediate the conflict between the parties to foster amicable co-parenting of the minor child. Mother indicated that the July 14, 2023, Proposed Custody Order was acceptable to her. However, Father would not accept the Proposed Order, and indicated that he wished to further pursue the custody litigation in his effort to obtain primary custody of the minor child. Therefore, after the pre-trial conference on October 6, 2023, the Court entered an Order scheduling trial in this matter to begin in December, 2023.

Prior to trial in this matter, the Court was alerted that there would be a stipulation between the parties that Mother's mental health would not be an issue at trial, so it would not be necessary for Mother to present expert testimony on her mental health to the Court during trial

The Court held trial and heard testimony from both parties on December 15 and December 19 of 2023. The Court heard oral argument and announced its decision on January 2, 2024.

During trial, it came to the Court's attention that Father had recently filed a petition for a reduction of child support payments on July 23, 2023.[1] The Court was informed that Father became

---

[1] On July 23, 2023, Father filed a petition for reduction of his child support payments. The Honorable Judge Tocci entered an interim child support order on August 31, 2023. The Court held a child support hearing on September 11,

angry at the child support hearing when he learned that his support payments were to be increased instead of decreased. Following the support hearing, Father confronted Mother outside the courthouse on the public street about the support payments. He stated to Mother "Are you serious? How can you do this to me?" An agreed PFA Order was entered following this incident naming Mother as a protected party. The Order was entered without either party making any admissions to the underlying accusations, however during the custody trial on December 15, Father admitted that he became upset and angry because of the increase in child support, and that he confronted Mother and made the above statements to her. That PFA Order has since been dismissed by agreement of the parties.

At the custody trial, during cross-examination of Father by Counsel for Mother, Counsel for Mother asked Father what his objective was in continuing to pursue primary custody of the minor child. Father responded that he wanted one more day of custody of the minor child, because he believed that he should have custody whenever Mother needed to use childcare providers when she was at work. Father also stated that his main concerns with Mother's care of the minor child related to the child's education and hygiene.

At trial, no credible evidence was introduced that established that Mother had any mental illness that affected her ability to parent L.J.R. As indicated, when Father was questioned by Counsel for Mother, he stated that he desired a change of one additional day of custody in the shared order.

After observing the demeanor and testimony of the parties, as well as considering all the factors of 23 Pa. C.S.A. § 5328 on the record, the Court made a specific finding of fact that one of

---

2023, and issued a modified child support order on September 12. Judge Tocci's September 12 order increased Father's child support payment obligation. Father filed exceptions to the child support order on September 21, 2023. Judge Tocci held a hearing on Father's exceptions, and on November 30, 2023, the Court issued an Order dismissing Father's exceptions and making the September 12 order a final support order.

3

Father's primary incentives for continuing to pursue a change in the shared custody order was the recently-ordered increase in Father's child support payments and Father's desire to have his child support payments lowered so that he can afford to build a house.

Despite the tension between the parties, the Court found that it was in the best interest of the minor child to maintain the provisions of the shared custody order entered on July 14, 2023, with some minor modifications. The Court incorporates into this Opinion its review of the § 5328 factors on the record as preserved by the D.A.R. recording system on January 2, 2024. The Court has attached a copy of an interim transcript of the Court's discussion of the § 5328 factors to this Opinion.

Father filed a Notice of Appeal and Concise Statement of Matters Complained on Appeal on February 1, 2024. In his Concise Statement, Father raises two claims of error by this Court:

(1) Father alleges that this Court erred and abused its discretion by allegedly failing to accurately apply 23 Pa. C.S.A. § 5328 and its sixteen child custody factors to the facts of this case.

(2) Father also alleges that this Court erred and abused its discretion by concluding that one of Father's motivations in continuing to pursue a modification of the Proposed Order was his desire to obtain a reduction in his child support payments. Father asserts that this was not his motivation and that it is not a custody factor.

For the reasons stated below and the reasons discussed by the Court during its review of the § 5328 factors on the record at the January 2, 2024, hearing, Father's claims are without merit.

In addition, the Court notes that Father's Notice of Appeal includes a Request for Transcript. However, Father has taken none of the additional steps required for the Beaver County Court Reporters to prepare the transcript for transmission to the Superior Court. As of the date of

4

the entry of this Opinion, the Beaver County Court Reporters have not received a Transcript Request Form or a deposit payment for the transcript in accordance with Pa. R.A.P. 1922, Rule LR4007, and Pa. R.J.A. 4007. Per Pa. R.A.P. Rule 1921, it is the appellant's responsibility to ensure that the record is complete to enable comprehensive appellate review. This responsibility extends to requesting trial transcripts. Pa. R.A.P. Rule 1921. The Court entered an Order on February 13, 2024, directing Father to comply with these rules in order to have a complete record. Because Father has failed to take the necessary steps for the Court Reporters to transcribe the proceedings, there is no transcript of the trial held in this case at this time. The Court requests that Father's appeal be dismissed and costs accessed to him as the appellant.

## ANALYSIS

23 Pa. C.S.A. § 5328 provides a non-exhaustive list of factors for the Court to consider when awarding child custody. That statute, in relevant part, states:

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

5

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

**(b) Gender neutral.**--In making a determination under subsection (a), no party shall receive preference based upon gender in any award granted under this chapter.

23 Pa. C.S.A. § 5328(a)-(b). "**All** of the factors listed in § 5328(a) are required to be considered by the trial court when entering a custody order." K.D. v. E.D., 2021 PA Super 224, 267 A.3d 1215, 1231 (2021) (quoting J.R.M. v. J.E.A., 2011 Pa. Super. 263, 33 A.3d 647, 652 (2011)) (emphasis in original).

The Superior Court has noted:

6

Ka A

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

M.J.M. v. M.L.G., 2013 PA Super 40, 63 A.3d 331, 334 (2013) (quoting J.R.M. v. J.E.A., 2011

PA Super 263, 33 A.3d 647, 650 (2011)). In M.J.M., the Superior Court reviewed the trial court's

obligations in its review of the sixteen § 5328 factors:

In *J.R.M.*, the trial court issued an opinion in conjunction with its order awarding the mother primary custody in which it failed to address each section 5328(a) factor. Instead, it "based its decision almost exclusively on the fact that Child is breastfeeding and the parties' difficulty communicating with each other" and made no mention of the preponderance of the section 5328(a) factors.

*J.R.M.* 33 A.3d at 652. By failing to address each section 5328(a) factor in its opinion, we concluded that "the trial court failed to properly consider the statutorily mandated factors in arriving at its custody determination[.]" *Id.* We held that the trial court must expressly consider all of the section 5328(a) factors when entering a custody order in order to comply with the Custody Act's requirements, and that failure to do so amounts to an error of law. *Id.; see also M.P.,* 54 A.3d at 956 (holding that the trial court is required to provide reasons for its decision prior to appeal).

While the Custody Act requires a trial court to articulate the reasons for its decision prior to the filing of a notice of appeal and sets forth explicit factors that the trial court must consider when reaching its decision, 23 Pa.C.S.A. §§ 5323(d), 5328(a), Mother argues that that the trial court's articulation of its reasons must be detailed and extensive. She contends that the trial court is required to include references to the record, analysis of the conflicting evidence, findings as to the credibility of the witnesses on the particular issues and discussion of the witnesses' respective biases. Appellant's Brief at 29.

7

190 A

Mother misinterprets the depth of the trial court's obligations. The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors. 23 Pa.C.S.A. §§ 5323(d), 5328(a). Contrary to Mother's argument, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. For example, from the trial court's Explanation of Decision in the case at bar,[5] it is clear that while the trial court found the majority of the section 5328(a) factors to balance fairly equally between Mother and Father, the trial court found that Father was more likely to promote a relationship with Mother than Mother would with Father and that Mother's attention to Child's educational needs was a point of grave concern. The trial court further concluded that Father would better attend to these needs. Explanation of Decision, 8/16/12, at 1–9.[6] Thus, in its Explanation of Decision, the trial court did precisely what it should have done; it weighed the entirety of the section 5328(a) factors in making the custody determination and articulated its considerations in a manner that informed the parties of the reasons for the custody award.

M.J.M. v. M.L.G., 2013 PA Super 40, 63 A.3d 331, 335–36 (2013).

### 1. Father's first claim that the Court failed to accurately apply the § 5328 factors is without merit because the Court considered each factor on the record.

In his first claim, Father alleges that the Court erred and abused its discretion by failing to accurately apply 23 Pa. C.S.A. § 5328 and its sixteen child custody factors to the factual circumstances of this case. Father maintains that Mother does not have any available childcare, that she leaves for work early in the morning which allegedly limits the minor child's sleep, and that she generally lacks stability in her life. Father concludes that in his view a proper application of the sixteen § 5328 factors would have led the Court to award him primary physical custody of the minor child.

Father's claims are contradicted by the record. The Court heard two days of testimony in this matter on December 15 and 19, 2023. At the January 2, 2024, hearing date, after Counsel for both parties gave closing arguments, the Court went through each of the sixteen factors on the record. The Court carefully reviewed and considered the evidence and exhibits presented by both parties in making its decision after having the opportunity to observe the parties' demeanor and

8

attitudes during the custody proceedings. The Court will provide a summary of its review of §
5328 factors for the purposes of this Opinion, and it incorporates its review and discussion of the
§ 5328 factors in this Opinion as if fully set forth herein.

Factor (1), "Which party is more likely to encourage and permit frequent and continuing contact
between the child and another party", favors Mother.

On factor (1) of § 5328, "Which party is more likely to encourage and permit frequent and
continuing contact between the child and another party", after observing the demeanor of the
parties and hearing testimony from both sides, the Court found that Mother was more likely to
encourage and allow frequent and continuing contact between the minor child and Father. The
Court noted that the Provisional Order from July 2023 was tailor-made to fit Father's work
schedule and the arrangements that Father requested. Mother accepted the Provisional Order, even
though it did not take her own work schedule into account. The Court also found significant
Father's testimony during cross-examination by Counsel for Mother that he would be amenable to
receiving just one additional day of custody of the minor child. This testimony struck the Court
as not making much sense given Father's stated goal of acquiring primary custody, and the Court
found Father's testimony telling of his motivation in continuing to pursue child custody litigation
against Mother. In addition, the Court noted that in his original complaint Father had claimed that
Mother had mental health issues which prevented her from adequately caring for the minor child.
However, despite this claim Father only sought one additional day of physical custody according
to his own testimony at trial. The Court found this significant because the Court could not see
how Mother, someone who works at a hospital and cares for patients, could have such serious
mental health issues that she could adequately care for her patients but not for her own minor child.
Later in the litigation Father stipulated that Mother's mental health would not be an issue at trial,
but the parties went back and forth about the specific meaning of the stipulation's wording. The

9

Court made a finding of fact that Father raised the issue of Mother's mental health in an effort to gain the upper hand in the custody litigation. The Court never heard anything concerning regarding Mother's mental health or her ability to properly care for the minor child during the child custody litigation. The Court believes that Father's statement that he only wanted one more day of custody supports this conclusion.

Factor (8), "The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm", favors Mother.

In its consideration of factor (8), "The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm", the Court finds that Father is more likely to make attempts to turn the child against Mother. The Court was troubled by Father's testimony that stated that he planned on telling his three-year-old son about the effect that his child support obligations have on his finances and how it affected him. The Court does not believe that it is appropriate for a parent to involve their young child in adult matters concerning court-ordered child support payments. The Court finds that there is no legitimate basis for Father to tell L.J.R. about the increase in child support payments. The Court also notes that Father posted on Facebook about how he has to "support a second household he shouldn't be responsible." (Defendant's Ex. I). Father's public post about these matters concerned the Court.

In its review of this factor the Court also referenced the PFA action between the parties. However, that PFA was automatically dismissed without any admissions to the underlying allegations in the PFA, so the Court did not give the PFA any weight and did not consider it in making its custody determination.

10

103 A

<u>Factor (9), "Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs", favors Mother.</u>

On factor (9), "Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs", the Court found, based on the testimony presented, that Mother would be more likely to maintain a loving, stable, consistent, and nurturing relationship with the minor child. The Court noted that there was evidence showing that Father obtained the password to a baby monitor located in Mother's house without seeking permission from Mother. Without Mother's knowledge, Father logged into the baby monitor to check when Mother was putting the minor child to bed. This evidence concerned the Court for several reasons. First, the evidence that Father logged into the baby monitor in Mother's separate private residence and looked through the monitor's camera while Mother's own mother was caring for the child to see what time the child went to bed. This tactic does not strike the Court as a good co-parenting strategy. There was also evidence showing that Father complained about Mother's choice of babysitters, discussed more below as to factor (12). The Court found it concerning that after Father directly contacted the babysitter himself, he had a third party anonymously contact the babysitter. This evidence, along with the evidence about the baby monitor, raises concern to the Court. Lastly, the Court noted that it found it concerning that the PFA Order was entered soon after the child support hearing. However, as noted above, because that PFA Order was dismissed by agreement of the parties, the Court did not consider the PFA Order and gave it no weight in its custody determination. In conclusion, all of this evidence led the Court to find in favor of Mother on this factor.

11

<u>Factor (12), "Each party's availability to care for the child or ability to make appropriate child-care arrangements", favors Mother.</u>

On factor (12), "Each party's availability to care for the child or ability to make appropriate child-care arrangements", the Court noted that Mother had been at a significant disadvantage compared to Father following the end of their relationship. After they broke up, Mother had to move out of the home she had shared with Father. Within a very short period of time, Father had a new relationship and his new significant other had moved into his house to live with him.[2] Father's choice to start a new family and Mother having to move out of her home put her at a disadvantage because she had to live with her parents until she could get her own housing. At first, Mother obtained a single-bedroom apartment. Father repeatedly objected to that apartment and attempted to have Mother move to other apartments that he had selected. Prior to trial in this matter, Mother purchased a home in Hopewell Township. At trial, Mother presented photographs of her new home. (Defendant's Ex. G). The Court found that Mother's new house was a good home for the minor child. The evidence showed that the house was fully decorated, that it was clean, and that it was suitable for childrearing. Father also presented evidence at trial to show that his house was also a good home for the minor child. (Plaintiff's Ex. 1). Therefore, both parties have good houses for childrearing.

Father claims in his Notice of Appeal that Mother does not have any available childcare for L.J.R. while she is at work. The Court finds that Father contributed to Mother's difficulties in acquiring childcare due to his intermeddling in her childcare decisions. Evidence at trial showed that Father repeatedly complained about Mother's own family caring for the minor child when Mother was unavailable. Father testified that he objected to the minor child staying overnight with

---

[2] The Court notes that Father's new significant other had been Mother's best friend prior to Father and Mother's break up.

12

Mother's family members, including Mother's parents, because he believes that it is the mother's responsibility to be with the minor child for nighttime issues like wetting the bed. Father testified that it is Mother's responsibility to deal with those issues, not someone else's, including Mother's own family. Mother also asked Father's parents to assist with childcare during her custody period. However, Father attempted to use this against Mother by arguing that any time when L.J.R. was being watched by Father's parents during Mother's custody should count as Father's custody time and not Mother's. This led Mother to stop asking Father's parents for childcare assistance.

In addition, Mother established at trial that she had acquired professional daycare services within five minutes of her home in Hopewell. However, Father's intermeddling in Mother's childcare decision may have caused the daycare provider to stop working with Mother. Father called the daycare provider to ask about the provider's qualifications and certifications. Next, Father had a third party call the daycare to ask additional questions. Father's interference in Mother's daycare decision may have contributed to the daycare provider not offering further daycare services to Mother. (Defendant's Ex. J). When Mother told Father that he had caused the daycare to stop working with her on Our Family Wizard, Mother stated "I was told over and over again you did not consent but this was something I had to do as it was my time with [L.J.R.] as you do what you want on your time and I respect that as [L.J.R.'s] dad that your time is your time but I don't understand why my time isn't thought about!" (Id.). This statement also shows that Mother is willing to cooperate with Father for L.J.R.'s best interests, even if he isn't willing to cooperate with her.

At trial, Mother presented evidence of her efforts to acquire a new daycare provider since Father's intermeddling caused the original daycare provider to terminate its relationship with her. (Defendant's Ex. K). Despite these difficulties, Mother established at trial that she is on the waitlist

13

for a new daycare provider. However, at the time of trial Father was continuing to meddle in Mother's decisions about childcare. Mother presented evidence that Father has continued to interfere with her choice of childcare by repeatedly questioning her decisions on childcare providers.

All this conflict led the Court to add additional language to the final custody order directing the parties to not interfere with the other parent's decision regarding preschool, daycare, and babysitting services while the minor child is in their physical custody. The Order directs the non-custodial parent to make any inquires concerning the adequacy of the custodial parent's choice of preschool, daycare, or babysitter only through their legal counsel unless agreed to in writing.

As to the alleged lack of stability in Mother's life, the Court believes that any instability in Mother's life was caused by these hardships she had to endure and overcome. By the time of trial Mother had regained stability in her life. Father's current claim that she still lacks stability is without merit based on the record. Also, Mother presented evidence at trial that she is on a waitlist for a new professional daycare provider. (Defendant's Ex. K). Therefore, this factor favors Mother.

Factor (13), "The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. . . .", favors Mother.

Next, on factor (13), "The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. . . .", the Court found that Mother was more willing to cooperate with Father than Father was with Mother. Based on the evidence and testimony presented at trial, Mother showed that no matter what Father said or did to her, she would still cooperate with Father so that he could remain in the minor child's life and have continued contact with the minor child. Mother accommodated Father's work schedule by agreeing to the Proposed Order, even though the Order did not accommodate her own work

14

schedule. As stated above, Mother's messages to Father on Our Family Wizard show that she is willing to allow Father to make his own decisions about childcare while he has custody of L.J.R.. However, Father's repeated meddling in Mother's decisions about childcare, and his use of the baby monitor to track the minor child's sleeping habits while he is with Mother, show that Father is not showing Mother the same respect and courtesy that Mother shows him. Therefore, factor (13) favors Mother.

Factor (10), "Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child", slightly favors Mother.

The Court found that factor (10), "Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child", weighed slightly in Mother's favor based on the circumstances. While the Court believes that both Mother and Father are good parents, the evidence at trial shows that Mother is more likely to attend to the minor child's needs.

Factor (3), (4), (5), and (6) weighed equally in favor of both Mother and Father.

The Court found that factors (3), (4), (5), and (6) weighed equally in the favor of both parties. On factor (3), "The parental duties performed by each party on behalf of the child", the Court found that both Father and Mother are equally good parents to the minor child, so factor (3) does not weigh in either party's favor. There was ample evidence at trial that both Mother and Father spend time with the minor child, that they take the child to do activities with friends and family, and generally that they do things with the minor child that a good parent would do with their child. (Defendant's Exs. H, L; Plaintiff's Ex. 4).

On factor (4), "The need for stability and continuity in the child's education, family life and community life", the Court determined that this factor was favorable to both parties. As discussed

15

above, while Mother had to overcome several difficulties and disadvantages since she moved out of the home she had shared with Father, at this point in time Mother has built a stable life for herself and L.J.R. Mother presented evidence that she purchased a house in Hopewell Township and presented numerous photographs of the home to the Court. Father's Notice of Appeal raises issues with the minor child's sleeping habits. However, Father's repeated insistence that Mother has a duty to deal with any nighttime issues of the minor child has prevented Mother from asking her family to care for the minor child overnight, which they are fully capable of doing. Again, it appears that Father has caused the issues that he complains of through his continuous interference with Mother's custodial rights during the time that she has custody of L.J.R. As far as the minor child's educational needs, the Court notes that the minor child is not even four years old, and he is not even in kindergarten yet at this point in time. Father wants the minor child to attend pre-school, but the Court does not believe that this goal warrants taking custody away from Mother.

On factor (5), "The availability of extended family", the Court found that this factor also favored both parties. Both parties have extended family, including the parties' parents, who are able to help with caring for the minor child. Mother had her parents help with supervising the minor child while she was at work, but Father complained about their involvement. Mother asked Father's parents to help her with childcare as well, but when Father attempted to argue that since his parents were watching L.J.R. during Mother's custody time, that time should count as his own custody time, Mother was advised to not ask Father's parents to help with childcare during her time of custody. Regardless of Father's complaints, both parties have extended family who are available to support each parent in raising their minor child, so this factor does not favor one party over the other.

16

On factor (6), "The child's sibling relationships", the Court notes that the minor child has a step-sister, the daughter of Father's significant other, and a new half-brother, the son of Father and his new significant other. The Court finds that the fact that the minor child has a new brother does not justify taking custody away from Mother, because in the current arrangement the minor child spends half of his time with Father and his new brother. Father testified that his significant other has custody of her daughter at the same time that he has custody of L.J.R., so the minor child spends time with his step-sister and his half-brother when Father has custody. The Court finds that the current arrangement provides the minor child with ample time to see his step-sister and half-brother. Thus, this factor does not favor either party, as the Court does not find it fair to take Mother's custody away just because Father has quickly formed a new family since Mother and Father parted ways.

Factor (2), (2.1), (7), (11), (14), and (15) are irrelevant to the facts of his case.

The Court considered factors (2), (2.1), (7), (11), (14), and (15) on the record, but found that these factors were irrelevant in this case. The Court found factor (2), "The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child", to be irrelevant to this case because there are no allegations of abuse. As to factor (2.1), "The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services)", the Court noted that after a child support hearing which concluded in an increase in Father's child support payments, Father was upset by the increase. On the same day as the child support hearing, a report was filed against Mother to CYS, which the Court found suspicious. CYS found that there was no basis for the complaint. However, the Court noted on the record that it did not consider this factor in making

17

its child custody determination. On factor (7), "The well-reasoned preference of the child, based on the child's maturity and judgment", the Court determined that the minor child is too young to make a determination as to her custody preference. On factor (11), "The proximity of the residences of the parties", the Court found that there was some travel time involved in the current situation, but that any travel time did not have a substantial effect on the best interests of the minor child. The Court found factor (14), "The history of drug or alcohol abuse of a party or member of a party's household", to be irrelevant to this case. Lastly, the Court did not find factor (15), "The mental and physical condition of a party or member of a party's household", to be relevant in this case.

In conclusion, the Court found that more of the § 5328 factors favored Mother in this case. However, the Court decided to keep the July 14, 2023, Proposed Order in place with only minor modifications regarding the custody exchange location and a provision ordering the parties to make inquiries about the adequacy of the other parent's childcare arrangements through counsel. The Court also noted that it asked the parties whether a week-on-week-off custody arrangement would be acceptable to both parties, but both parties stated that this arrangement would cause them problems. The Court took this to imply that the current custody order was working for both parties. The Court found that this arrangement was in the best interests of the minor child and was the best arrangement for the current circumstances of this case.

Based on the discussion above, Father's first claim is without merit, as the Court reviewed each of the sixteen § 5328 factors in open court on the record at the January 2, 2024, hearing and properly applied them to the factual circumstances of this case.

18

**2. Father's second claim that the Court erred by finding that Father's motivation in pursuing child custody litigation was to obtain a decrease in child support payments is without merit as that factual finding was not the sole basis of the Court's custody decision and is supported by the trial record.**

Father alleges in his second claim that this Court erred and abused its discretion by concluding that one of Father's motivations in continuing to pursue a modification of the Proposed Order was to obtain a reduction in his child support payments. Father asserts that this was not his motivation and that it is not a custody factor.

In this case, the Court heard evidence at trial that Father filed a petition for reduction in child support on July 23, 2023. The Court learned that Father became angry at the hearing on his child support motion when he learned that the Court was going to increase his support payments instead of decreasing them. After the child support hearing, Father confronted Mother on the public street about the support payments. An agreed PFA Order was filed after this confrontation, without either party making any factual admissions. That PFA Order expired on agreement by the parties. At the child custody trial, Father's testimony that his objective in continuing to pursue the child custody litigation was to gain one more day of physical custody of the minor child struck the Court as odd since Father alleged that he was seeking primary physical custody of the minor child in his pre-trial filings. This led the Court to consider whether Father had ulterior motives in continuing to litigate this matter.

After hearing this testimony, and after observing the demeanor of both parties, the Court made a factual finding on the record that one of Father's motivations in pursuing this child custody litigation was because of the recent increase in his child support payments. Father pursued child custody litigation in an effort to decrease his payments so that he could pursue his plan of building a house. While the Court noted that it was admirable for Father to build a new house for himself,

19

202 A

the minor child, and their family, the Court did not think it was fair to take physical custody away from Mother under these circumstances.

Despite Father's contention, the Court properly reviewed each of the sixteen § 5328 factors on the record, as summarized above. Factor (15) of § 5328 allows the Court to consider "(16) Any other relevant factor" when making its determination on child custody. The Court believes that Father's motivation in continuing his efforts to obtain primary custody of the minor child is relevant, given that his motivation appears to not concern the actual best interests of the minor child but to his own interest in obtaining a decrease in his child support payments.

In addition, the Court did not base its custody decision solely on its finding that Father had ulterior motives in pursuing child custody litigation. The Court heard two days of testimony in this case. It heard the testimony of both parties, and examined the evidence and exhibits presented at trial. The Court carefully reviewed the § 5328 factors and applied them to the factual circumstances of this case before making its child custody determination. The Court determined that the current child custody arrangement was working for both parties, even though the current order still benefits Father over Mother, since it accommodates his work schedule but not hers. Even if the Court did not consider Father's motivation in continuing to pursue primary custody of the minor child, the Court's analysis and application of the § 5328 factors would not change. Regardless of Father's motivations behind continuing to pursue primary custody, proper application of the § 5328 factors shows that shared custody is in L.J.R.'s best interest. Both parents are good parents with good homes. Both have extended family available for childcare. Even though more of the § 5328 factors favor Mother, the Court finds that shared custody of L.J.R. is in the best interests of the child in this case. Therefore, Father's second claim on appeal is without merit.

20

## CONCLUSION

For the reasons stated in the foregoing Opinion and the reasons stated during the Court's review of the § 5328 factors on the record as captured by the D.A.R. recording system on January 2, 2024, the Court humbly asks the Superior Court to affirm its child custody decision, and/or to dismiss Father's appeal due to his failure to have the record of the proceedings transcribed.

BY THE COURT:

_Kym Tesla_____
J

21